UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NIA C. PRICE,

Plaintiff,

v.

MONROE SCHOOL TRANSPORTATION, INC., NATIONAL EXPRESS LLC, DURHAM SCHOOL SERVICES DBA MONROE SCHOOL TRANSPORTATION, INC., SUMMIT SCHOOL SERVICES LLC, JENNIFER TESSIER, individually, and in her official capacity, and JOHN DOES 1-10, whose true names are presently unknown,

Defendants.

Case No. 1:26-cv-02554

**NOTICE OF REMOVAL**

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

Defendants Monroe School Transportation, Inc., National Express LLC, Durham School Services DBA Monroe School Transportation Inc., and Summit School Services LLC (collectively, "Corporate Defendants"), by and through their attorneys, Jackson Lewis P.C., respectfully state:

1. Corporate Defendants file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446 to remove to this Court a certain civil action that Plaintiff Nia Price ("Plaintiff") commenced in New York State Supreme Court, County of Monroe, entitled, *Nia C. Price v. Monroe School Transportation, Inc., National Express LLC, Durham School Services DBA Monroe School Transportation Inc., and Summit School Services LLC, Jennifer Tessier, individually, and in her official capacity, and John Does 1-10, whose true names are presently unknown*, Index No. E2026019806 (hereinafter "State Court Action"). The State Court Action is presently pending in that court.

2. Pursuant to Local Rule 81(a)(3)(A) of this Court, annexed hereto as Exhibit A is an index identifying all documents filed in the State Court Action. Specifically, Exhibit A is a printout from the state court's electronic case docket (it is an e-filed case), listing all documents filed in that case as of November 3, 2026. There have been no other documents served in the State Court Action.

3. Pursuant to Local Rule 81(a)(3)(B) of this Court, all documents filed and/or served in the State Court Action to date are annexed hereto as the following Exhibits.

**Exhibit B – Plaintiff's Summons, filed in state court on August 3, 2026;**

**Exhibit C – Plaintiff's Complaint filed in state court on August 3, 2026;**

4. Plaintiff commenced the State Court Action by filing the Summons and Complaint on August 3, 2026 (Exhibits B and C).

5. Undersigned counsel for Corporate Defendants completed a Statement of Service By Mail on October 8, 2026. To date, Corporate Defendants understand that the individual Defendants have not been served.

6. This Notice of Removal is being timely filed within the provisions of 28 U.S.C. § 1446. Corporate Defendants have effected removal within thirty (30) days of the service of the Complaint from which it could first be ascertained that this action is removable. *See* 28 U.S.C. § 1446(b).

7. No proceedings have taken place in the State Court Action. Corporate Defendants have not served any answer or responsive pleading in connection with the State Court Action. Corporate Defendants have not made any appearance or argument before the Supreme Court of the State of New York, County of Monroe in connection with the State Court Action.

8. Plaintiff's Complaint in the State Court Action alleges that she is filing this action based, in part, on purported violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981 ("Section 1981"). *See* Exhibit C, ¶¶ 508-561.

9. Accordingly, the State Court Action is being removed to this Court pursuant to 28 U.S.C. § 1441 on the ground that original jurisdiction over Plaintiff's claims exists under 28 U.S.C. § 1331 by virtue of its federal question jurisdiction arising out of Plaintiff's claims under Title VII, the ADEA, and Section 1981 (hereinafter the "Federal Claims").

10. Plaintiff's Complaint in the State Court Action further alleges claims of race and age discrimination in violation of the New York State Human Rights Law ("NYSHRL") (hereinafter the "State Claims"). *See* Exhibit C, ¶¶ 429-507.

11. Plaintiff's State Claims form part of the same case or controversy as Plaintiff's Federal Claims. *See* 28 U.S.C. § 1367. Accordingly, this Court has pendent jurisdiction over Plaintiff's State Claims pursuant to 28 U.S.C. § 1367 by virtue of their purported relatedness to Plaintiff's Federal Claims, over which this Court has original jurisdiction.

12. Upon filing this Notice of Removal, Corporate Defendants shall give prompt written notice thereof to Plaintiff and shall file a copy of said Notice of Removal with the Clerk, Supreme Court of the State of New York, County of Monroe. Notice shall be given in two ways: (i) through electronic filing of the copy of this Notice of Removal in the State Court Action, inasmuch as Plaintiff's attorney is an e-filing participant in that case; and (ii) by transmitting a courtesy hard copy of the Notice of Removal to Plaintiff's attorney. We will file an affidavit of service in this Court.

13. Corporate Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled any claims upon which relief may be granted.

WHEREFORE, Corporate Defendants remove the above-captioned action now pending against them in the Supreme Court of the State of New York, County of Monroe, to the United States District Court for the Western District of New York, wherein it shall proceed as an action originally commenced therein.

Dated: November 4, 2026
Albany, New York

*ATTORNEYS FOR CORPORATE DEFENDANTS*
MONROE SCHOOL TRANSPORTATION INC.,
NATIONAL EXPRESS LLC,
DURHAM SCHOOL SERVICES DBA
MONROE SCHOOL TRANSPORTATION INC.,
SUMMIT SCHOOL SERVICES LLC

By: */s/Kristi Rich Winters*

Kristi Rich Winters
JACKSON LEWIS P.C.
677 Broadway, 9th Floor
Albany, NY 12207
Tel.: (518) 512-8700
Fax: (518) 242-7730
kristi.winters@jacksonlewis.com

# EXHIBIT A
# INDEX

**Documents filed and/or served in the state court action:**

NYSCEF
Monroe County Supreme Court

**Document List**
**Index # E2026019806**

Created on:11/03/2026 02:11 PM

Case Caption: **NIA C PRICE v. MONROE SCHOOL TRANSPORTATION, INC. et al**
Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| 1 | SUMMONS | Processed | 08/03/2026 | Cobbs, M. |
| 2 | COMPLAINT | Processed | 08/03/2026 | Cobbs, M. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>AOS for Def Durham School Services | Processed | 10/05/2026 | Cobbs, M. |
| 4 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>AOS for Def Monroe School Transportation | Processed | 10/05/2026 | Cobbs, M. |
| 5 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>AOS for Def National Express | Processed | 10/05/2026 | Cobbs, M. |
| 6 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>AOS for Summit School Services | Processed | 10/05/2026 | Cobbs, M. |
| 7 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service by Mail - Durham School Services | Processed | 10/09/2026 | Cobbs, M. |
| 8 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service by Mail - Monroe School Transportation | Processed | 10/09/2026 | Cobbs, M. |
| 9 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service by Mail - National Express | Processed | 10/09/2026 | Cobbs, M. |
| 10 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service by Mail - Summit School Services | Processed | 10/09/2026 | Cobbs, M. |

**CERTIFICATION OF SERVICE**

I hereby certify that on November 4, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ *Kristi Winters*_____
Kristi Winters

4930-4051-2734, v. 1

# EXHIBIT B

**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF MONROE**

---

**NIA C. PRICE,**

**Plaintiff,**

**v.**

**SUMMONS**

**Index No.**

**MONROE SCHOOL TRANSPORTATION, INC.,**
**NATIONAL EXPRESS LLC,**
**DURHAM SCHOOL SERVICES DBA**
**MONROE SCHOOL TRANSPORTATION, INC.,**
**SUMMIT SCHOOL SERVICES LLC,**
**JENNIFER TESSIER, individually, and in her official capacity**
**JOHN DOES 1–10, whose true names are presently unknown,**

**Defendants.**

---

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, on the Plaintiff's attorney within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Plaintiff designates Monroe County as the place of trial. The basis of venue is that the unlawful discriminatory acts complained of occurred in Monroe County, New York, Defendants conduct business in Monroe County, and Plaintiff resides in Monroe County. Dated:

Rochester, New York
August 3, 2026

**BROWN HUTCHINSON, LLP**

**By:** ______________________
Michael Cobbs, Esq.

Attorneys for Plaintiff
925 Crossroads Building
Two State Street
Rochester, New York 14614
Telephone: (585) 454-5050
Fax: (585) 454-5066

To:

**MONROE SCHOOL TRANSPORTATION, INC.**
**970 Emerson St.**
**Rochester, NY 14606**

**NATIONAL EXPRESS LLC**
**4300 Weaver Pkwy**
**Warrenville, IL 60555-3919**

**Durham School Services**
**DBA Monroe School Transportation, Inc**
**970 Emerson St**
**Rochester, NY 14606-2708**

**Summit School Services LLC**
**27755 Diehl Road, Suite 100**
**Warrenville, IL 60555**

**JENNIFER TESSIER**
**95 Ledgestone Pass**
**Brockport, NY 14420-9678**

**JOHN DOES 1–10**
**970 Emerson St.**
**Rochester, NY 14606**

# EXHIBIT C

**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF MONROE**

---

**NIA C. PRICE,**

**Plaintiff,**

**v.**

**COMPLAINT**
**Index No.**

**MONROE SCHOOL TRANSPORTATION, INC.,**
**NATIONAL EXPRESS LLC,**
**DURHAM SCHOOL SERVICES DBA**
**MONROE SCHOOL TRANSPORTATION, INC.,**
**SUMMIT SCHOOL SERVICES LLC,**
**JENNIFER TESSIER, individually, and in her official capacity**
**JOHN DOES 1–10, whose true names are presently unknown,**

**Defendants.**

---

Plaintiff, Nia Price, as and for her complaint alleges by and through her attorneys Brown Hutchinson, LLP, Michael Cobbs, Esq., *of Counsel* as follows:

## NATURE OF THE ACTION

1. This is an action for unlawful employment discrimination, hostile work environment, retaliation, discriminatory discharge, aiding and abetting unlawful discrimination, and related violations of the New York State Human Rights Law, Executive Law §§ 290 et seq., Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981.

2. Plaintiff seeks redress for a continuous course of unlawful discrimination perpetrated by Defendants because Plaintiff is an African-American woman who, at only twenty-two years of age, sought to advance from Bus Monitor to Commercial Driver.

3. Rather than encouraging Plaintiff's advancement, Defendants subjected her to discriminatory treatment, repeated age-based ridicule, racially charged comments, disparate treatment in compensation and training, and ultimately terminated her employment after she questioned the legality of Defendants' pay practices.

4. Plaintiff repeatedly attempted to resolve workplace concerns professionally and internally.

5. Instead of investigating Plaintiff's concerns, Defendants mocked Plaintiff, belittled her because of her youth, ignored complaints concerning discriminatory treatment, and ultimately removed her from employment.

6. Defendant Jennifer Tessier, the General Manager of Monroe School Transportation, was the principal decision-maker responsible for many of the discriminatory acts described herein.

7. During Plaintiff's employment, Tessier repeatedly referred to Plaintiff as a "child," questioned whether Plaintiff was "five years old," and told Plaintiff she could not comprehend simple matters because of her age.

8. Tessier further told Plaintiff, when Plaintiff requested assistance regarding payroll discrepancies, that:

"It's not my job to help you people."

9. Plaintiff reasonably understood this statement as referring to her race.

10. Plaintiff also alleges that Defendants treated similarly situated white and older employees more favorably with respect to training opportunities, compensation, and workplace treatment.

11. When Plaintiff questioned why she was not receiving pay she had earned for mandatory driver training, Defendants escalated their discriminatory conduct.

12. On August 18, 2023, after Plaintiff again sought payment for mandatory training, Tessier ordered Plaintiff out of the building.

13. Plaintiff asked Tessier directly whether she was being fired.

14. Rather than denying that Plaintiff was being terminated, Tessier nodded affirmatively, mocked Plaintiff's age by asking whether she was "five years old," questioned Plaintiff's ability to comprehend what was occurring, and slammed her office door in Plaintiff's face.

15. Plaintiff reasonably understood that she had been terminated.

16. Defendants later attempted to characterize Plaintiff's separation as "job abandonment."

17. That explanation is false and pretextual.

18. The evidence gathered during the New York State Division of Human Rights investigation revealed substantial factual disputes regarding the circumstances surrounding Plaintiff's discharge.

19. Following a lengthy investigation, the New York State Division of Human Rights determined that Probable Cause existed to believe Defendants engaged in unlawful discriminatory practices and referred Plaintiff's complaint for a public hearing. The Division identified material

factual disputes regarding, among other things, age-based comments and the circumstances of Plaintiff's separation from employment.

20. Plaintiff subsequently requested an Administrative Convenience Dismissal so that she could pursue her claims in court with the benefit of full civil discovery, including depositions, document production, and interrogatories.

21. The Division granted that request and dismissed the administrative proceeding solely for administrative convenience, thereby restoring Plaintiff's right to pursue judicial remedies.

22. Defendants' conduct caused Plaintiff to suffer substantial economic loss, emotional distress, humiliation, embarrassment, damage to her professional reputation, and continuing financial hardship.

23. Defendants further compounded Plaintiff's injuries by attempting to collect an alleged $2,000 training obligation from Plaintiff despite Plaintiff's contention that she never received the promised bonus and was unlawfully separated from employment.

24. Defendants' actions were intentional, willful, malicious, reckless, and undertaken with conscious disregard of Plaintiff's statutory rights.

25. Plaintiff therefore seeks all legal and equitable relief authorized by New York and federal law, including compensatory damages, back pay, front pay, emotional distress damages, punitive damages where legally available, attorney's fees, costs, prejudgment interest, declaratory relief, and such other relief as the Court deems just and proper.

**THE PARTIES**

26. Plaintiff **Nia C. Price** ("Plaintiff") is an adult resident of Monroe County, New York.

27. At all times relevant herein, Plaintiff was an employee of Defendants within the meaning of the New York State Human Rights Law, Executive Law §§ 290 et seq., Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981.

28. Plaintiff is an African-American woman.

29. Plaintiff was born on March 19, 2001.

30. During the events alleged herein, Plaintiff was twenty-two (22) years of age and was the youngest employee, or among the youngest employees, employed in the driver workforce at Monroe School Transportation.

31. Plaintiff was hired by Defendants on or about March 20, 2023 as a Bus Monitor.

32. Plaintiff thereafter successfully obtained her Commercial Driver's License permit and progressed into driver training in an effort to become a full-time commercial school bus driver.

33. Plaintiff consistently sought advancement, additional responsibilities, and increased earnings through successful completion of the commercial driver training program.

34. Plaintiff was fully qualified to perform the essential functions of her position with or without reasonable accommodation.

35. At all relevant times Plaintiff performed her duties satisfactorily.

**Defendant Monroe School Transportation, Inc.**

36. Defendant Monroe School Transportation, Inc. ("Monroe") is a domestic or authorized foreign corporation doing business within the State of New York.

37. Monroe regularly conducts business within Monroe County.

38. Monroe employed Plaintiff.

39. Monroe was Plaintiff's employer within the meaning of the New York State Human Rights Law.

40. Monroe exercised substantial control over Plaintiff's wages, hours, discipline, supervision, working conditions, hiring, firing, promotion, training, and terms and conditions of employment.

**Defendant National Express LLC**

41. Defendant National Express LLC ("National Express") is a corporation authorized to conduct business within New York.

42. At all relevant times National Express owned, operated, controlled, managed, or substantially directed Monroe School Transportation.

43. National Express maintained centralized human resources functions, employment policies, anti-discrimination policies, supervisory authority, and employment practices affecting Plaintiff.

44. National Express exercised actual and apparent authority over Plaintiff's employment.

45. National Express and Monroe operated as Plaintiff's joint employers and/or constituted an integrated enterprise.

46. National Express participated in employment decisions affecting Plaintiff.

47. National Express is therefore jointly and severally liable for the unlawful employment practices alleged herein.

**DURHAM SCHOOL SERVICES DBA MONROE SCHOOL TRANSPORTATION, INC.,**

48. Defendant Durham School Services Dba Monroe School Transportation, Inc., ("Durham ") is a corporation authorized to conduct business within New York.

49. At all relevant times National Express owned, operated, controlled, managed, or substantially directed Monroe School Transportation.

50. Durham maintained centralized human resources functions, employment policies, anti-discrimination policies, supervisory authority, and employment practices affecting Plaintiff.

51. Durham exercised actual and apparent authority over Plaintiff's employment.

52. Durham and Monroe operated as Plaintiff's joint employers and/or constituted an integrated enterprise.

53. Durham participated in employment decisions affecting Plaintiff.

54. Durham is therefore jointly and severally liable for the unlawful employment practices alleged herein.

**SUMMIT SCHOOL SERVICES LLC**

55. Defendant Summit School Services LLC ("Summit") is a corporation authorized to conduct business within New York.

56. At all relevant times Summit owned, operated, controlled, managed, or substantially directed Monroe School Transportation.

57. Summit maintained centralized human resources functions, employment policies, anti-discrimination policies, supervisory authority, and employment practices affecting Plaintiff.

58. Summit exercised actual and apparent authority over Plaintiff's employment.

59. Durham, Monroe and Summit operated as Plaintiff's joint employers and/or constituted an integrated enterprise.

60. Summit participated in employment decisions affecting Plaintiff.

61. Summit is therefore jointly and severally liable for the unlawful employment practices alleged herein.

**Defendant Jennifer Tessier**

62. Defendant ` was, at all relevant times, General Manager of Monroe School Transportation.

63. Tessier possessed authority to hire, discipline, supervise, evaluate, suspend and terminate employees.

64. Tessier exercised direct supervisory authority over Plaintiff.

65. Tessier personally participated in numerous discriminatory acts alleged herein.

66. Tessier personally made decisions affecting Plaintiff's compensation, training, discipline, and continued employment.

67. Tessier personally participated in and substantially aided, encouraged, directed, and ratified the unlawful discriminatory conduct alleged herein.

68. Accordingly, Tessier is individually liable under Executive Law § 296(6) for aiding and abetting discriminatory practices.

**John Doe Defendants**

69. Plaintiff presently lacks knowledge of the identities of certain individuals who participated in or authorized the discriminatory conduct described herein.

70. Plaintiff therefore sues such persons as John Does 1 through 10.

71. Plaintiff will amend this Complaint upon discovery of their identities.

**JURISDICTION AND VENUE**

72. This Court possesses subject matter jurisdiction pursuant to Article VI of the New York Constitution and the CPLR.

73. Venue is proper in Monroe County pursuant to CPLR 503 because:

a. the unlawful employment practices occurred in Monroe County;

b. Defendants transact business in Monroe County;

c. Plaintiff worked in Monroe County; and

d. Plaintiff resides in Monroe County.

74. Defendants regularly conduct business within Monroe County and derive substantial revenue from business conducted therein.

**ADMINISTRATIVE EXHAUSTION**

75. On or about August 25, 2023, Plaintiff timely filed a verified administrative complaint with the New York State Division of Human Rights alleging discrimination based upon race and age.

76. Plaintiff simultaneously dual-filed her administrative complaint with the Equal Employment Opportunity Commission pursuant to the work-sharing agreement between the agencies.

77. The complaint was assigned NYSDHR Case No. 10228454 and EEOC Charge No. 16GC305637.

78. Defendants appeared and contested the allegations.

79. Defendants submitted a written Position Statement denying discrimination.

80. Plaintiff submitted a detailed rebuttal together with documentary evidence.

81. The Division conducted an extensive investigation.

82. The investigation included interviews of witnesses employed by Defendants.

83. Documentary evidence was reviewed.

84. Payroll records, personnel records, training records, and additional submissions were considered.

85. On July 31, 2024, the Division issued a written Determination After Investigation finding **Probable Cause** to believe Defendants had engaged in unlawful discriminatory practices.

86. The Division further determined that disputed issues of material fact existed regarding, among other things:

a. Defendant Tessier's age-related remarks;

b. whether Plaintiff had been terminated;

c. whether Defendants' asserted reason for separation constituted pretext; and

d. whether Defendants violated the New York State Human Rights Law.

87. The Division referred the matter to a public hearing before an Administrative Law Judge.

88. Thereafter Plaintiff elected to pursue her claims in court where full civil discovery would be available.

89. Plaintiff therefore requested that the Division dismiss the administrative proceeding solely for administrative convenience in order to pursue judicial remedies.

90. Defendants did not oppose Plaintiff's request for an Administrative Convenience Dismissal.

91. The Administrative Law Judge recommended dismissal for administrative convenience.

92. The Division adopted that recommendation and entered a Final Order dismissing the administrative proceeding solely for administrative convenience.

93. The dismissal was not based upon a determination that Plaintiff's claims lacked merit.

94. To the contrary, the Division had already found probable cause and ordered a public hearing before the dismissal was requested.

95. Plaintiff has requested and intends to rely upon an EEOC Notice of Right to Sue with respect to her federal statutory claims. Plaintiff will supplement or amend this pleading as necessary to reflect the issuance of the Notice if it has not yet been issued at the time of filing.

96. All conditions precedent to the maintenance of Plaintiff's state-law claims have been satisfied, excused, or otherwise fulfilled.

97. Plaintiff has timely pursued her administrative remedies under New York law.

98. Plaintiff's judicial claims are authorized following the administrative convenience dismissal entered by the Division.

99. To the extent any limitations issue is raised, Plaintiff alleges that her claims are timely under the applicable statutes of limitation and further alleges any tolling, suspension, or preservation of claims available under New York law.

100. Plaintiff expressly reserves the right to rely upon all statutory and equitable tolling doctrines applicable to the claims asserted herein.

**STATEMENT OF FACTS**

**A. Plaintiff's Employment, Qualifications, and Early Success**

101. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

102. Plaintiff began her employment with Defendants on or about March 20, 2023, as a Bus Monitor assigned to Monroe School Transportation in Rochester, New York.

103. At the time she was hired, Plaintiff was twenty-two (22) years old.

104. Plaintiff was one of the youngest employees employed by Defendants in Rochester.

105. Plaintiff is an African-American female.

106. Plaintiff accepted employment because she intended to pursue a long-term career as a commercial school bus driver.

107. Plaintiff demonstrated initiative and ambition from the outset of her employment.

108. Unlike many newly hired employees, Plaintiff immediately expressed her desire to obtain a Commercial Driver's License and become a school bus driver.

109. Defendants encouraged Plaintiff to pursue driver certification.

110. Plaintiff successfully completed orientation and began performing her assigned duties.

111. Plaintiff consistently reported to work as scheduled.

112. Plaintiff maintained satisfactory attendance.

113. Plaintiff did not engage in misconduct.

114. Plaintiff received no disciplinary write-ups during the early months of her employment.

115. Plaintiff quickly became interested in advancing beyond the position of Bus Monitor.

116. Plaintiff invested her own time and effort toward obtaining the licenses and endorsements necessary to become a commercial driver.

117. Plaintiff personally paid for required written examinations administered by the New York State Department of Motor Vehicles.

118. Defendants did not reimburse Plaintiff for those examination costs.

119. Plaintiff successfully obtained her Commercial Driver's License permit.

120. Plaintiff also obtained the passenger and school bus endorsements required for advancement.

121. Plaintiff expected that her successful completion of these milestones would result in increased responsibilities and increased compensation.

122. Plaintiff was advised that her hourly wage would increase upon becoming a Van Driver.

123. Plaintiff relied upon those representations.

**Payroll Problems Begin**

124. Shortly after transitioning into the Van Driver position, Plaintiff discovered that her wages had not been increased as promised.

125. Plaintiff's starting wage as a Bus Monitor was approximately $15.65 per hour, as reflected by her payroll records.

126. Plaintiff expected her hourly wage to increase to approximately $18.85 per hour after obtaining her commercial driving qualifications.

127. Despite performing duties consistent with the higher position, Defendants failed to timely implement the promised wage increase.

128. Plaintiff also discovered she had not been compensated for mandatory pre-service work she previously completed.

129. Plaintiff reasonably believed payroll errors had occurred.

130. Plaintiff first attempted to resolve those issues through appropriate internal channels.

131. Plaintiff approached Charlie Ainsworth, then the Safety and Training Supervisor.

132. Plaintiff also discussed the matter with Amanda Swartzenberg, who was then serving in management.

133. Mr. Ainsworth acknowledged Plaintiff's concerns.

134. Mr. Ainsworth contacted payroll personnel on Plaintiff's behalf.

135. Before the matter could be resolved, Mr. Ainsworth's employment with Defendants ended.

136. Plaintiff thereafter sought assistance from General Manager Jennifer Tessier.

**Jennifer Tessier's Response**

137. Plaintiff respectfully explained that she had not received the compensation she had earned.

138. Rather than investigate Plaintiff's concerns, Tessier dismissed them.

139. Tessier told Plaintiff, in substance, "Not my problem."

140. Plaintiff attempted to explain that payroll had not corrected the issue.

141. Plaintiff asked Tessier whom she should contact to resolve the missing wages.

142. Rather than assist Plaintiff, Tessier responded, "It's not my job to help you people."

143. Plaintiff immediately understood that statement to refer to her race.

144. Plaintiff was shocked by the remark.

145. Plaintiff had approached management seeking assistance concerning earned wages.

146. Instead of receiving assistance, Plaintiff was subjected to a humiliating and discriminatory response from the General Manager.

147. Plaintiff questioned Tessier regarding the meaning of the phrase "you people."

148. Tessier did not clarify or retract the statement.

149. Instead, Tessier ordered Plaintiff to leave her office.

150. Plaintiff complied.

151. Plaintiff felt embarrassed, humiliated, and singled out.

152. Plaintiff reasonably believed that Tessier's conduct reflected hostility toward her because she was African American.

**Continued Payroll Problems**

153. Plaintiff continued attempting to resolve the payroll discrepancies through management.

154. On the following day, Plaintiff met with Amanda Swartzenberg concerning the missing wages.

155. Jennifer Tessier was also present.

156. Plaintiff calmly explained that she had not been properly paid.

157. Plaintiff further explained that she should not have to repeatedly seek wages she had already earned.

158. During this meeting, Tessier again became hostile.

159. Tessier referred to Plaintiff as

"a child with an attitude."

160. Tessier further stated that Plaintiff "doesn't listen."

161. Plaintiff had not behaved disrespectfully.

162. Plaintiff had simply requested payment of earned wages.

163. Amanda Swartzenberg apologized to Plaintiff regarding the payroll problems.

164. Shortly thereafter, Defendants issued retroactive wages totaling approximately $302.60, thereby confirming that Plaintiff's payroll concerns had been legitimate.

165. Defendants' correction of Plaintiff's wages demonstrated that Plaintiff had been underpaid.

166. Plaintiff's complaints were therefore well-founded.

167. Despite this confirmation, Tessier never apologized for her treatment of Plaintiff.

168. Nor did Tessier retract her discriminatory remarks.

169. Instead, Tessier's treatment of Plaintiff became increasingly hostile over the following weeks.

**Early Evidence of Age Bias**

170. Plaintiff was substantially younger than nearly all supervisors and drivers employed by Defendants.

171. Tessier regularly referenced Plaintiff's age during workplace interactions.

172. Tessier repeatedly referred to Plaintiff as "child."

173. Tessier frequently minimized Plaintiff's concerns by attributing them to her youth.

174. Plaintiff was not treated with the same level of respect afforded older employees.

175. Plaintiff reasonably believed that Tessier viewed her age as a reason to discount her opinions and concerns.

176. These comments were not isolated.

177. Rather, they became part of an ongoing pattern of ridicule and condescension directed toward Plaintiff because of her age.

178. Plaintiff attempted to continue performing her duties despite this conduct.

179. Plaintiff remained committed to completing her commercial driver training and advancing within the company.

180. At no time during this period did Plaintiff abandon her employment.

181. Plaintiff continued working toward becoming a fully licensed commercial school bus driver.

182. Plaintiff hoped that successful completion of training would improve her working relationship with management.

183. Instead, Defendants' discriminatory treatment intensified as Plaintiff progressed through the CDL training process.

184. The discriminatory conduct culminated in the events of August 18, 2023, when Plaintiff's employment was terminated under circumstances that Defendants later attempted to characterize as "job abandonment."

**CDL TRAINING, DISPARATE TREATMENT, AND ESCALATING DISCRIMINATION**

185. Plaintiff repeats and realleges each and every preceding allegation as though fully set forth herein.

186. Throughout the spring and summer of 2023, Plaintiff remained committed to advancing her career as a commercial school bus driver.

187. Plaintiff successfully obtained her Class B Commercial Learner's Permit and all necessary endorsements required to continue commercial driver training.

188. Plaintiff eagerly awaited placement into Defendants' commercial driver training program.

189. Plaintiff was advised that she would begin CDL driver training shortly after obtaining her permit.

190. Based upon her qualifications, Plaintiff reasonably expected to begin training during or about April 2023.

191. Plaintiff was initially placed near the top of the training list.

192. Despite her qualifications and readiness to begin training, Plaintiff's advancement was delayed.

193. Plaintiff observed that other employees, including older employees and white employees hired around the same time, were permitted to begin CDL training before she was.

194. Plaintiff repeatedly inquired regarding the reason for the delay.

195. Defendants failed to provide a satisfactory explanation.

196. Plaintiff was informed only that she would have to wait.

197. Upon information and belief, less-qualified or similarly situated employees outside Plaintiff's protected classes were advanced ahead of Plaintiff.

198. Defendants' actions delayed Plaintiff's ability to earn increased wages and obtain permanent commercial driver status.

199. Plaintiff reasonably believed the delay was motivated, at least in part, by discriminatory considerations.

**Entry-Level Driver Training (ELDT)**

200. As part of New York's commercial licensing requirements, Plaintiff was required to complete Entry-Level Driver Training ("ELDT").

201. ELDT was mandatory for individuals seeking to obtain a commercial driver's license.

202. Plaintiff completed the ELDT classroom instruction as required.

203. Plaintiff understood that employees were compensated for mandatory training time.

204. Plaintiff's instructors likewise represented that mandatory training was compensable.

205. Plaintiff completed approximately ten hours of ELDT instruction.

206. Plaintiff later learned that documentation reflecting completion of the course could not be located.

207. Plaintiff was advised that her ELDT records had been lost.

208. Because of Defendants' failure to maintain accurate training records, Plaintiff was required to repeat the entire ELDT course.

209. Plaintiff successfully completed the course a second time.

210. Plaintiff devoted an additional ten hours to the repeated training.

211. Plaintiff reasonably expected to be compensated for both mandatory training sessions.

212. Plaintiff specifically informed management that she had completed the required coursework.

213. Plaintiff notified Jennifer Tessier.

214. Plaintiff also notified Amanda Swartzenberg.

215. Plaintiff was assured that she would receive payment after successfully completing her CDL examination.

216. Plaintiff relied upon those representations.

**Disparate Treatment Regarding Training Pay**

217. Plaintiff observed an older white male trainee receive compensation for mandatory ELDT before passing his CDL examination.

218. Plaintiff understood that the employee had been paid for the same mandatory course that Defendants refused to pay Plaintiff.

219. Plaintiff questioned why she was being treated differently.

220. Defendants failed to provide a legitimate explanation.

221. Plaintiff reasonably believed that Defendants were applying their compensation policies inconsistently.

222. Plaintiff further believed the disparity was motivated by race and age.

223. Defendants have since denied that any employee received separate compensation for ELDT.

224. Plaintiff disputes that assertion.

225. Plaintiff's observations concerning the treatment of similarly situated employees remain accurate.

226. Discovery is expected to reveal payroll records, training records, instructor records, and employee time records confirming the inconsistent application of Defendants' training compensation practices.

**Successful Completion of CDL Examination**

227. Despite the obstacles created by Defendants, Plaintiff successfully completed her CDL training.

228. On or about August 17, 2023, Plaintiff successfully passed her commercial driver's license road examination.

229. Plaintiff was proud of this accomplishment.

230. Plaintiff believed successful completion of the examination would finally resolve the outstanding issue concerning payment for mandatory training.

231. Plaintiff expected to receive the wages previously promised.

232. Plaintiff had every intention of continuing her employment with Defendants as a commercial driver.

233. Plaintiff had no intention whatsoever of resigning her position.

234. Plaintiff had no intention of abandoning her employment.

235. Rather, Plaintiff had just successfully completed months of commercial driver training and anticipated beginning the upcoming school year as a commercial bus driver.

**The August 18, 2023 Payroll Dispute**

236. On August 18, 2023, the day after successfully passing her CDL examination, Plaintiff reported to Defendants' facility.

237. School was not then in session.

238. Plaintiff was not scheduled to drive a route that day.

239. Plaintiff's sole purpose in reporting to the facility was to obtain payment for the mandatory ELDT training she had completed.

240. Plaintiff sought to retrieve the ELDT timesheet necessary for payroll processing.

241. Plaintiff first attempted to locate the trainer who conducted the course.

242. The trainer was unavailable.

243. Plaintiff therefore went to Jennifer Tessier's office.

244. Christina Cope was also present.

245. Plaintiff politely asked whether her ELDT timesheet could be located.

246. Plaintiff explained that she wished to submit the paperwork to payroll so she could receive compensation for the mandatory training she had completed.

247. Rather than assist Plaintiff, Tessier immediately became confrontational.

248. Tessier questioned why Plaintiff believed she was entitled to payment.

249. Plaintiff calmly explained that the training was mandatory and that she had successfully completed the CDL examination the previous day.

250. Tessier told Plaintiff that she would not be paid for the ELDT training.

251. Plaintiff respectfully asked why.

252. Tessier responded, in substance: "Because you're my worker and I'm your boss."

253. Plaintiff was stunned by the response.

254. Plaintiff reminded Tessier that she previously had been told the training would be paid after completion of the examination.

255. Tessier stated that she did not care.

256. Plaintiff again attempted to discuss the matter professionally.

257. Plaintiff remarked that she was tired of continually being treated unfairly because she was the youngest employee.

258. Rather than addressing Plaintiff's concern, Tessier escalated the confrontation.

259. Tessier stated that she was tired of hearing Plaintiff speak.

260. Tessier again referred to Plaintiff as a "child."

261. Tessier stated that Plaintiff was merely "a little girl."

262. Tessier further stated that Plaintiff would not listen.

263. Christina Cope did not intervene to stop the discriminatory comments.

264. Instead, Plaintiff's legitimate payroll concerns were dismissed.

265. Plaintiff had merely requested payment for wages she believed she had earned.

266. Defendants instead chose to ridicule, belittle, and humiliate Plaintiff.

267. The confrontation rapidly escalated and culminated in Plaintiff's termination, as more

fully described below.

**268. THE AUGUST 18, 2023 DISCRIMINATORY DISCHARGE**

269. Plaintiff repeats and realleges each and every preceding allegation as though fully set forth herein.

270. By August 18, 2023, Plaintiff had successfully completed the requirements necessary to become a commercial school bus driver.

271. Plaintiff had passed her Commercial Driver's License road examination the previous day.

272. Plaintiff reasonably expected to begin working as a commercial bus driver for Defendants.

273. Plaintiff had invested months of work, training, study, and personal expense in obtaining her commercial driver's license.

274. Plaintiff had every intention of continuing her employment with Defendants.

275. Plaintiff had no intention whatsoever of resigning her employment.

276. Plaintiff had no intention of abandoning her position.

277. Plaintiff simply sought payment for mandatory training that she had completed.

278. Plaintiff's request concerned wages she reasonably believed had been earned.

279. Plaintiff's request was made respectfully and through appropriate management channels.

280. Plaintiff did not threaten anyone.

281. Plaintiff did not refuse a work assignment.

282. Plaintiff did not engage in insubordination.

283. Plaintiff did not violate any company rule.

284. Plaintiff merely questioned why she was being denied compensation for mandatory training after successfully passing her CDL examination.

285. Jennifer Tessier became visibly irritated during the discussion.

286. Rather than addressing Plaintiff's payroll concerns, Tessier became increasingly hostile.

287. Plaintiff reminded Tessier that she believed she was being treated differently because she was the youngest employee.

288. Instead of investigating Plaintiff's concern, Tessier again referred to Plaintiff as a "child."

289. Tessier further referred to Plaintiff as "that little girl."

290. Plaintiff attempted to continue speaking with Christina Cope concerning her pay.

291. Before Plaintiff could complete the discussion, Tessier interrupted.

292. Tessier stated, in substance:

293. "Don't waste your time. That little girl isn't going to listen anyway."

294. Plaintiff again attempted to clarify why she would not receive payment.

295. Tessier abruptly ended the discussion.

296. Tessier then stated:

297. "You know what I would like to hear?"

298. Plaintiff asked what Tessier meant.

299. Tessier responded:

300. "Your footsteps walking out of the building."

301. Plaintiff reasonably understood that statement to mean that her employment was being terminated.

302. Plaintiff wished to ensure there was no misunderstanding.

303. Plaintiff therefore asked Jennifer Tessier: "So you're firing me?"

304. Rather than deny that Plaintiff was being terminated, Tessier mocked Plaintiff's age.

305. Tessier responded in substance: "What are you? Like five?"

306. Tessier further asked Plaintiff: "You can't comprehend?"

307. Plaintiff calmly explained that she simply wanted to know whether she was being fired.

308. Plaintiff again sought clarification.

309. Tessier responded affirmatively by nodding her head.

310. Tessier again instructed Plaintiff to leave.

311. Plaintiff stated that she was not actually inside Tessier's office but was standing in the doorway.

312. Plaintiff explained that she merely wanted confirmation that she was being terminated.

313. Before Plaintiff could complete her statement, Tessier stood and slammed her office door directly in front of Plaintiff.

314. Plaintiff reasonably concluded that her employment had been terminated.

315. Plaintiff left the premises.

316. Plaintiff did not return because she believed she had been fired by the General Manager.

317. Plaintiff's understanding was entirely reasonable under the circumstances.

318. Any reasonable employee would have interpreted Tessier's statements and conduct as a termination of employment.

319. At no time during the August 18 encounter did Tessier tell Plaintiff that she remained employed.

320. At no time did Tessier instruct Plaintiff to report to work on August 28, 2023.

321. At no time did Tessier tell Plaintiff that she would continue working during the upcoming school year.

322. At no time did Christina Cope correct Plaintiff's understanding that she had been terminated.

323. Plaintiff thereafter returned home believing her employment had ended.

**The August 28, 2023 Telephone Call**

324. Prior to August 18, 2023, Defendants had scheduled a mandatory employee refresher meeting for August 28, 2023.

325. Because Plaintiff believed she had been terminated, she did not attend that meeting.

326. On August 28, 2023, Plaintiff received a telephone call from one of Defendants' trainers.

327. Plaintiff recalls that trainer to have been Jasmine.

328. Upon information and belief, Jennifer Tessier was present during the call.

329. The trainer asked Plaintiff why she had not reported for the refresher training.

330. Plaintiff responded that she had not attended because Jennifer Tessier had fired her.

331. The trainer repeated Plaintiff's statement to Jennifer Tessier.

332. Rather than deny firing Plaintiff, the trainer advised Plaintiff that Jennifer Tessier was asking whether Plaintiff would return.

333. Plaintiff declined.

334. Plaintiff explained that she would not return because of the discriminatory treatment she had experienced.

335. Plaintiff had already been humiliated by Tessier.

336. Plaintiff no longer believed she would receive fair treatment from Defendants.

337. Defendants never sent Plaintiff a letter stating that she remained employed.

338. Defendants never instructed Plaintiff to return to work.

339. Defendants never attempted to correct Plaintiff's understanding that she had been discharged.

340. Instead, weeks later, Defendants began asserting that Plaintiff had abandoned her employment.

**Defendants' "Job Abandonment" Explanation**

341. Defendants now contend that Plaintiff voluntarily abandoned her employment.

342. That assertion is false.

343. Plaintiff never resigned.

344. Plaintiff never submitted a resignation.

345. Plaintiff never expressed an intention to resign.

346. Plaintiff never sought employment elsewhere before August 18, 2023.

347. Plaintiff had just completed months of commercial driver training.

348. Plaintiff had every reason to continue working.

349. Plaintiff expected increased compensation as a licensed commercial driver.

350. Defendants' claim of "job abandonment" is inconsistent with their own conduct.

351. If Defendants truly believed Plaintiff remained employed, they could have clearly informed her of that fact on August 28, 2023.

352. They did not.

353. Nor did they promptly classify Plaintiff's separation as job abandonment.

354. According to Defendants, Plaintiff was not administratively coded as separated until October 20, 2023.

355. That administrative designation occurred more than two months after the August 18 confrontation.

356. The timing of Defendants' explanation raises a substantial question regarding whether the asserted reason for Plaintiff's separation was created after the fact.

357. Plaintiff alleges that the "job abandonment" explanation is a pretext designed to conceal discriminatory termination.

358. The New York State Division of Human Rights likewise identified a material factual dispute regarding whether Plaintiff had been unlawfully terminated or whether Defendants' asserted explanation was legitimate, one of the reasons the agency found probable cause and referred the matter to a public hearing.

359. Defendants' explanation has shifted over time and is inconsistent with Plaintiff's contemporaneous understanding, the August 28 telephone call, and the circumstances surrounding the August 18 confrontation.

360. Plaintiff was terminated because of unlawful discrimination based upon her race and age and because she challenged Defendants' treatment of her in connection with wages and working conditions.

361. Plaintiff repeats and realleges each and every preceding allegation as though fully set forth herein.

**Continuing Financial Harm**

362. Following her separation from employment, Plaintiff immediately lost her primary source of income.

363. Plaintiff had reasonably expected to begin the 2023-2024 school year as a commercial school bus driver.

364. Instead, Plaintiff found herself unemployed.

365. Plaintiff suffered the loss of wages.

366. Plaintiff suffered the loss of future earning opportunities.

367. Plaintiff suffered the loss of employment benefits.

368. Plaintiff suffered the loss of retirement contributions.

369. Plaintiff suffered the loss of employment-related opportunities for advancement.

370. Plaintiff was required to search for alternative employment.

371. Plaintiff's financial circumstances became significantly more difficult as a direct result of Defendants' conduct.

372. Plaintiff has sustained substantial economic damages.

**Debt Collection Concerning the Alleged Training Bonus**

373. Following Plaintiff's separation, Defendants asserted that Plaintiff was obligated to reimburse approximately $2,000 relating to Defendants' commercial driver training program.

374. Plaintiff disputes that obligation.

375. Plaintiff maintains that she never received the $2,000 training bonus Defendants now claim she must repay.

376. Plaintiff has consistently maintained that she was never paid the alleged bonus.

377. Plaintiff's payroll records do not reflect payment of a $2,000 training bonus.

378. Nevertheless, Defendants sought to recover the alleged amount from Plaintiff.

379. Plaintiff thereafter received communications from a debt collector seeking payment of the alleged obligation.

380. Plaintiff experienced substantial stress and anxiety as a result of those collection efforts.

381. Plaintiff believed Defendants were attempting to penalize her after her employment ended.

382. Plaintiff further believed Defendants' actions were inconsistent with their own assertion that she voluntarily abandoned her employment.

383. Plaintiff alleges that Defendants' attempt to recover the alleged training costs constituted additional adverse treatment arising from the same course of conduct described herein.

**Emotional Distress**

384. Defendants' discriminatory conduct caused Plaintiff substantial emotional harm.

385. Plaintiff experienced humiliation.

386. Plaintiff experienced embarrassment.

387. Plaintiff experienced anxiety.

388. Plaintiff experienced frustration.

389. Plaintiff experienced loss of confidence.

390. Plaintiff experienced emotional pain after repeatedly being referred to as a "child."

391. Plaintiff experienced emotional pain after being mocked because of her age.

392. Plaintiff experienced emotional pain after hearing Jennifer Tessier state, "It's not my job to help you people."

393. Plaintiff reasonably interpreted that statement as directed toward her because she is African American.

394. Plaintiff further suffered emotional distress after being publicly humiliated during the August 18, 2023 confrontation.

395. Plaintiff has continued to experience emotional distress resulting from Defendants' conduct.

396. Plaintiff's emotional injuries were foreseeable.

397. Defendants either intended those consequences or acted with reckless disregard for the likelihood they would occur.

**NYSDHR Investigation**

398. Plaintiff timely filed a complaint with the New York State Division of Human Rights.

399. Defendants appeared in that proceeding.

400. Defendants submitted a written Position Statement denying discrimination.

401. Plaintiff submitted a written rebuttal together with documentary evidence supporting her allegations.

402. The Division conducted an extensive investigation.

403. The investigation included witness interviews.

404. The investigation included review of documentary evidence submitted by both parties.

405. During the investigation, former Assistant General Manager Amanda Swartzenberg confirmed that Jennifer Tessier made statements referring to Plaintiff as "a child with an attitude" and stating that Plaintiff "doesn't listen," consistent with Plaintiff's account.

406. The investigation also documented testimony that Jennifer Tessier referred to Plaintiff as acting "like five" or "like a child" during the August 18 confrontation.

407. The investigation further identified disputed facts concerning whether Plaintiff was discharged on August 18, 2023 or later separated for alleged job abandonment.

408. On July 31, 2024, after completing its investigation, the Division issued a Determination After Investigation finding probable cause to believe Defendants engaged in unlawful discriminatory practices.

409. The Division concluded that material issues of fact existed regarding, among other things, whether Plaintiff was subjected to age-based comments constituting a hostile work environment and whether Defendants' asserted reason for Plaintiff's separation was legitimate or discriminatory.

410. Based upon those findings, the Division referred the matter to a public hearing before an Administrative Law Judge.

411. Thereafter, Plaintiff elected to pursue her claims in court where full civil discovery would be available.

412. Plaintiff requested an Administrative Convenience Dismissal solely for that purpose.

413. The Administrative Law Judge recommended granting Plaintiff's request.

414. Defendants did not object to the requested Administrative Convenience Dismissal.

415. The Division adopted the recommendation and dismissed the administrative proceeding solely for administrative convenience.

416. The dismissal was procedural only and was not based upon any determination that Plaintiff's claims lacked merit.

**Defendants' Conduct Was Intentional and Willful**

417. Defendants knew or reasonably should have known that discrimination on the basis of

race and age was prohibited by federal and New York law.

418. Defendants maintained written policies prohibiting discrimination, harassment, retaliation, and workplace bullying.

419. Defendants further maintained policies requiring supervisors to address complaints of discrimination promptly and appropriately.

420. Jennifer Tessier failed to comply with those policies.

421. Plaintiff's complaints were not investigated in good faith.

422. Instead, Plaintiff's concerns were dismissed, ridiculed, or ignored.

423. Defendants failed to take prompt corrective action.

424. Defendants ratified Jennifer Tessier's conduct by failing to remedy the discrimination after it occurred.

425. Defendants failed to adequately supervise, monitor, discipline, and train supervisory personnel regarding compliance with anti-discrimination laws and Defendants' own written policies.

426. Defendants' conduct was intentional, malicious, reckless, and undertaken with conscious disregard of Plaintiff's statutory rights.

427. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, embarrassment, loss of professional opportunities, and other compensatory damages in an amount to be determined at trial.

428. Unless enjoined by this Court, Defendants' unlawful employment practices are likely to continue to affect other employees.

**FIRST CAUSE OF ACTION**
**Race Discrimination**
**(New York State Human Rights Law – Executive Law § 296)**
**Against All Defendants including but not limited to Monroe School Transportation, Inc., National Express LLC, and Jennifer Tessier (to the extent permitted under the NYSHRL)**

429. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 432 of this Complaint as though fully set forth herein.

430. At all relevant times, Plaintiff was a member of a protected class because she is African American.

431. Plaintiff was qualified to perform the essential functions of her position.

432. Plaintiff satisfactorily performed her job duties.

433. Plaintiff possessed the education, licenses, endorsements, and qualifications necessary to continue employment as a commercial driver.

434. Plaintiff successfully completed Defendants' CDL training program.

435. Plaintiff successfully passed the New York State commercial driver's license examination.

436. Plaintiff was qualified to continue employment.

437. Plaintiff suffered adverse employment actions.

438. Those adverse actions included, but were not limited to:

a. disparate treatment regarding compensation;
b. delayed advancement opportunities;
c. denial of earned wages;
d. disparate treatment concerning mandatory training compensation;
e. racially offensive remarks;
f. hostile treatment by management;

g. discriminatory discharge; and
h. post-employment debt collection efforts arising out of the same course of conduct.

439. Plaintiff was subjected to discriminatory comments by Jennifer Tessier.
440. Among those comments was the statement:
441. "It's not my job to help you people."
442. Plaintiff reasonably understood that statement as referring to her race.
443. Plaintiff immediately questioned the meaning of that statement.
444. Tessier did not deny making the remark.
445. Tessier instead ordered Plaintiff to leave her office.
446. The discriminatory remark occurred while Plaintiff was seeking assistance concerning payroll issues.
447. Plaintiff had engaged in no misconduct.
448. Plaintiff merely sought payment of wages she had earned.
449. Rather than receiving assistance, Plaintiff was treated differently because of her race.
450. Plaintiff further alleges that similarly situated white employees received more favorable treatment concerning training, compensation, and advancement opportunities.
451. Plaintiff observed older white employees beginning CDL training before she was permitted to do so.
452. Plaintiff further observed an older white employee receiving payment for mandatory ELDT training under circumstances in which Plaintiff was denied payment.
453. Defendants have failed to articulate a consistent and credible explanation for those differences in treatment.
454. Plaintiff further alleges that Defendants' asserted explanation concerning her separation from employment is false.
455. Defendants contend Plaintiff abandoned her employment.
456. Plaintiff did not abandon her employment.
457. Plaintiff reasonably believed she had been terminated by Jennifer Tessier.
458. The "job abandonment" explanation was asserted only after Plaintiff had already left the workplace believing she had been fired.
459. The timing of Defendants' explanation supports an inference of pretext.
460. The New York State Division of Human Rights likewise determined that disputed factual issues existed concerning the legitimacy of Defendants' explanation for Plaintiff's separation and found probable cause to believe unlawful discrimination occurred.
461. Defendants intentionally discriminated against Plaintiff because of her race.
462. Defendants' actions violated Executive Law § 296.
463. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered:

a. lost wages;
b. lost future earnings;
c. loss of employment benefits;
d. emotional distress;
e. humiliation;
f. embarrassment;
g. damage to professional reputation;
h. attorney's fees where authorized by law;

i. costs and disbursements; and
j. other damages to be determined at trial.

464. Defendants' conduct was intentional, willful, and undertaken in reckless disregard of Plaintiff's rights under the New York State Human Rights Law.

465. Plaintiff is entitled to all remedies authorized under Executive Law § 297, including compensatory damages, attorney's fees, costs, declaratory relief, injunctive relief, prejudgment interest where recoverable, and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**Age Discrimination**
**(Executive Law § 296)**
**Against All Defendants including but not limited to Defendants Monroe School Transportation, Inc. and National Express LLC**

466. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 446 of this Complaint as though fully set forth herein.

467. At all relevant times, Plaintiff was a member of a protected class under the New York State Human Rights Law because of her age.

468. At the time of the discriminatory acts alleged herein, Plaintiff was twenty-two (22) years old.

469. Plaintiff was among the youngest employees employed by Defendants in the commercial driver workforce.

470. Plaintiff was qualified to perform the essential functions of her position.

471. Plaintiff successfully completed Defendants' commercial driver training.

472. Plaintiff successfully obtained the licenses and endorsements necessary to perform the position of commercial school bus driver.

473. Plaintiff satisfactorily performed her job duties.

474. Plaintiff consistently demonstrated initiative by pursuing advancement opportunities within Defendants' organization.

475. Rather than encouraging Plaintiff's advancement, Defendants repeatedly treated Plaintiff differently because of her age.

476. Defendant Jennifer Tessier repeatedly referred to Plaintiff as a "child."

477. Tessier repeatedly referred to Plaintiff as "that little girl."

478. Tessier told Plaintiff that she had "an attitude."

479. Tessier repeatedly stated that Plaintiff "doesn't listen."

480. During the August 18, 2023 confrontation, Tessier mocked Plaintiff by asking, in substance: "What are you, five?"

481. Tessier further asked Plaintiff: "You can't comprehend?"

482. Those comments were made immediately before Plaintiff's employment ended.

483. The comments directly referenced Plaintiff's youth.

484. The comments were neither isolated nor accidental.

485. Rather, they reflected a continuing pattern of ridicule directed toward Plaintiff because of her age.

486. Plaintiff repeatedly attempted to conduct herself professionally despite these remarks.

487. Plaintiff never responded with disrespect.

488. Plaintiff merely requested payment of wages she reasonably believed she had earned.

489. Plaintiff further sought equal treatment in training and advancement opportunities.

490. Rather than addressing Plaintiff's legitimate concerns, Tessier repeatedly used Plaintiff's youth to belittle and diminish her.

491. Upon information and belief, similarly situated older employees were not subjected to comparable comments concerning their age or maturity.

492. Plaintiff was repeatedly reminded by Tessier that she was younger than other employees.

493. Plaintiff alleges that Defendants viewed Plaintiff's youth as a reason to disregard her concerns and to deny her equal treatment.

494. Plaintiff further alleges that Defendants perceived Plaintiff as inexperienced because of her age and treated her accordingly.

495. The discriminatory comments became increasingly frequent as Plaintiff progressed toward becoming a commercial driver.

496. The comments culminated in Plaintiff's discriminatory discharge.

497. The temporal proximity between the age-based remarks and Plaintiff's termination supports a reasonable inference of discriminatory intent.

498. Defendants' asserted explanation that Plaintiff voluntarily abandoned her employment is false.

499. Plaintiff reasonably believed she had been discharged by the General Manager after being told to leave the building, mocked because of her age, and receiving an affirmative response when she asked whether she was being fired.

500. The subsequent assertion of "job abandonment" was pretextual.

501. During the NYSDHR investigation, witnesses corroborated portions of Plaintiff's account regarding Jennifer Tessier's age-related remarks, and the Division concluded that there were material factual disputes regarding whether Plaintiff had been subjected to age-based comments constituting a hostile work environment and whether Defendants' stated reason for her separation was legitimate.

502. The Division therefore found probable cause and referred the matter to a public hearing.

503. Defendants intentionally discriminated against Plaintiff because of her age.

504. Defendants' conduct violated Executive Law § 296.

505. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered:

a. loss of wages;
b. loss of future earnings;
c. loss of employment opportunities;
d. emotional distress;
e. humiliation;
f. embarrassment;
g. mental anguish;
h. damage to professional reputation;
i. attorney's fees as authorized by law;
j. costs and disbursements; and
k. such additional damages as may be proven at trial.

506. Defendants acted intentionally, willfully, maliciously, and with reckless disregard of Plaintiff's rights under the New York State Human Rights Law.

507. Plaintiff is entitled to all legal and equitable relief available under Executive Law §

297, including compensatory damages, attorney's fees, costs, declaratory relief, equitable relief, and such further relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Race Discrimination**
**(42 U.S.C. § 1981)**
**Against All Defendants including but not limited to Monroe School Transportation, Inc. and National Express LLC**

508. Plaintiff repeats and realleges paragraphs 1 through 510 as though fully set forth herein.

509. Plaintiff is an African-American woman and is a member of a racial minority protected by 42 U.S.C. § 1981.

510. At all relevant times, Defendants were parties to an employment relationship and contractual relationship with Plaintiff within the meaning of § 1981.

511. Plaintiff was qualified for her position and satisfactorily performed her job duties.

512. Defendants intentionally discriminated against Plaintiff because of her race with respect to the making, performance, modification, enjoyment, and termination of her employment contract.

513. Defendants subjected Plaintiff to disparate treatment regarding compensation, training, advancement opportunities, and the terms and conditions of employment.

514. Plaintiff was subjected to racially charged comments, including the statement attributed to Jennifer Tessier that "It's not my job to help you people."

515. Plaintiff alleges that Defendants intentionally treated similarly situated non-Black employees more favorably.

516. Defendants' conduct culminated in Plaintiff's discriminatory discharge.

517. Defendants' actions were intentional and motivated, at least in part, by Plaintiff's race.

518. As a direct and proximate result of Defendants' conduct, Plaintiff suffered economic loss, emotional distress, humiliation, and other compensable damages.

519. Plaintiff is entitled to compensatory damages, punitive damages (if supported by the evidence), attorney's fees where authorized, costs, and all other relief available under federal law.

**FOURTH CAUSE OF ACTION**
**Retaliation**
**(42 U.S.C. § 1981)**
**Against All Defendants including but not limited to Monroe School Transportation, Inc. and National Express LLC**

520. Plaintiff repeats and realleges paragraphs 1 through 522

521. Plaintiff opposed what she reasonably believed to be unlawful race discrimination.

522. Plaintiff complained about discriminatory treatment, including the "you people" comment and disparate treatment concerning compensation and training.

523. Defendants were aware of Plaintiff's protected activity.

524. Shortly after Plaintiff engaged in protected activity, Defendants subjected her to materially adverse actions, culminating in the August 18, 2023 termination.

525. The temporal proximity and surrounding circumstances support a reasonable inference of retaliatory motive.

526. Defendants' stated reason for Plaintiff's separation was pretextual.

527. As a result of Defendants' retaliation, Plaintiff sustained damages.

**FIFTH CAUSE OF ACTION**
**Race Discrimination**
**(Title VII of the Civil Rights Act of 1964) Against All Corporate Defendants including but not limited to Monroe School Transportation, Inc. and National Express LLC**

528. Plaintiff repeats and realleges paragraphs 1 through 530.
529. Plaintiff timely filed a Charge of Discrimination with the EEOC.
530. Plaintiff has received, or will receive before proceeding on this claim, a Notice of Right to Sue, and this action is commenced within the applicable statutory period after receipt of that notice.
531. Plaintiff is a member of a protected class.
532. Plaintiff was qualified for her position.
533. Defendants discriminated against Plaintiff because of her race.
534. Defendants subjected Plaintiff to disparate treatment concerning wages, training, advancement opportunities, and discharge.
535. Defendants' conduct created discriminatory terms and conditions of employment.
536. Plaintiff suffered an adverse employment action.
537. Defendants' actions violated Title VII.
538. Plaintiff is entitled to all remedies available under Title VII, including back pay, front pay, compensatory damages, attorney's fees, costs, and equitable relief.

**SIXTH CAUSE OF ACTION**
**Hostile Work Environment**
**(Title VII)**
**Against All Corporate Defendants including but not limited to Monroe School Transportation, Inc. and National Express LLC**

539. Plaintiff repeats and realleges paragraphs 1 through 541.
540. Plaintiff was subjected to unwelcome conduct because of her race.
541. The conduct included racially charged remarks, disparate treatment, humiliation, and discriminatory treatment regarding compensation and advancement.
542. The discriminatory conduct altered the terms and conditions of Plaintiff's employment.
543. Defendants knew or should have known of the conduct and failed to take prompt corrective action.
544. Defendants are liable for the hostile work environment created by supervisory personnel.
545. Plaintiff sustained damages as a result.

**SEVENTH CAUSE OF ACTION**
**Retaliation**
**(Title VII)**
**Against All Corporate Defendants including but not limited to Monroe School Transportation, Inc. and National Express LLC**

546. Plaintiff repeats and realleges paragraphs 1 through 548.
547. Plaintiff engaged in protected activity by complaining about what she reasonably

believed was unlawful discrimination.

548. Defendants were aware of Plaintiff's protected activity.

549. Defendants thereafter subjected Plaintiff to adverse employment actions, including her termination.

550. A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions.

551. Defendants' explanation for Plaintiff's termination was pretextual.

552. Plaintiff suffered damages.

**EIGHTH CAUSE OF ACTION**
**Age Discrimination**
**(Age Discrimination in Employment Act)**
**Against All Corporate Defendants including but not limited to Monroe School Transportation, Inc. and National Express LLC**

553. Plaintiff repeats and realleges paragraphs 1 through 555.

554. Plaintiff timely filed an administrative charge alleging age discrimination.

555. Plaintiff has received, or will receive before proceeding on this claim, an EEOC Notice of Right to Sue, and this claim is timely asserted following satisfaction of the applicable administrative prerequisites.

556. Plaintiff was qualified for her position.

557. Defendants repeatedly referred to Plaintiff as a "child," "little girl," and mocked her by asking whether she was "five years old."

558. Those remarks were made by the decision-maker responsible for Plaintiff's employment.

559. The comments were made in close temporal proximity to Plaintiff's termination.

560. Defendants intentionally discriminated against Plaintiff because of her age.

561. Plaintiff suffered damages as a result.

**NINTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief**

562. Plaintiff repeats and realleges paragraphs 1 through 564.

563. An actual controversy exists regarding Defendants' compliance with federal and New York anti-discrimination laws.

564. Plaintiff seeks a declaration that Defendants violated those laws.

565. Plaintiff further seeks appropriate equitable relief, including any injunctive relief authorized by statute and warranted by the evidence.

**TRIAL BY JURY**

566. Plaintiff demands a trial by jury on all claims properly triable by a jury.

Wherefore, plaintiff Nia c. Price demands judgement against the defendants for the following:

A. An award of the value of Plaintiff's lost wages, benefits, bonuses and other monetary losses including back pay and front pay;

B. Compensatory damages;

C. Liquidated damages;

D. Punitive damages;

E. An award of reasonable attorneys' fees, expenses, expert fees, disbursements and costs incurred in vindicating the rights of Plaintiff;

F. An award of pre and post judgment interest;

G. Any and all other relief this court deems just and proper.

567.

Dated: Rochester, New York
August 3, 2026

**BROWN HUTCHINSON, LLP**

**By:** ______________________

Michael Cobbs, Esq.
Attorneys for Plaintiff
925 Crossroads Building
Two State Street
Rochester, New York 14614
Telephone: (585) 454-5050
Fax: (585) 454-5066